UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

CIVIL ACTION NO. 05-100-DLB

ALLISON GINDELE, ET AL.                                                      PLAINTIFFS

vs.                              **MEMORANDUM OPINION & ORDER**

AMERICAN UNITED LIFE
INSURANCE COMPANY                                                           DEFENDANT

*******************

Plaintiffs filed suit in state court challenging Defendant's delay in paying group life insurance benefits and refusal to pay accidental death benefits. Defendant subsequently removed the action to this Court. This matter is presently before the Court on Plaintiff's Motion to Remand for lack of subject matter jurisdiction. (Doc. #13)

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 26, 2003, Tim Gindele was involved in a single-car motor vehicle accident. He sustained serious, life-ending injuries.

At the time of the accident Mr. Gindele was a member of the Cincinnati Stage Employees Union, Local No. 5 (the "Union"). In 1976 the Union entered into the Cincinnati Stage Employees Local No. 5 Health & Welfare Fund Agreement and Declaration of Trust ("Trust Agreement"). This Trust Agreement created a health and welfare benefit plan (the "Plan") sponsored by the Union.[1] The Trust Agreement also created the Cincinnati Stage Employees Local No. 5 Health & Welfare Fund (the "Fund"). The Fund receives

---

[1] According to the Form 5500s filed by Defendant in support of its memorandum in opposition (Doc. #21), at all times relevant to this case the Plan name was the IATSE Cincinnati Stage Employees Local No. 5 Health and Welfare Plan.

contributions from employers with which the Union has collective bargaining agreements, which contributions are used to pay the premiums for certain group benefits provided to Union members, among them life and accidental death insurance. The insurers are selected and the group policies are negotiated by the Board of Trustees of the Fund.

Through the years, the Trust Agreement has been amended for various reasons, including the type and amount of benefits offered and Plan participant eligibility requirements.[2] At the time of Tim Gindele's death in 2003, the then current amendment called for the Plan to provide a group policy offering term life insurance and group accidental death benefits of $100,000 each for eligible participants in the Plan. The cost of such policy was to be paid by the Fund.

As a union member in good standing, Mr. Gindele was automatically enrolled by the Union as a participant in the Plan. This included the life insurance and accidental death coverages provided thereunder, at that time pursuant to a group policy issued by The Union Central Life Insurance Company, now Defendant American United Life Insurance Company ("American United Life"). Mr. Gindele had designated his children, Allison Gindele and Adam Gindele, the beneficiaries of these insurance benefits.

---

[2]To be accurate, Defendant's opposition refers to various amendments to the Trust Agreement itself. This description is confusing, since the language of the actual amendments provided with Defendant's filing reads either that it is an amendment to the "Fund" and/or an amendment to the "Plan," rather than an amendment to the Trust Agreement. Plaintiffs complain that, to date, no actual plan document has been produced by Defendant. The Trust Agreement, at Art. I, Sec. 7 and Art. VII, suggests a separate plan document exists, as does the language of the amendments. However, whether it is the Trust Agreement, or a separate Plan as referred to in the Trust Agreement, or each particular insurance policy that constitutes the employee welfare benefit "plan" is not clear to the Court based on Defendant's filings. What is clear is that the overall program was set up as and intended to be an ERISA plan, as discussed herein.

The Union performs administrative functions associated with the various benefits provided to its members under the Plan. This includes enrollment, recordkeeping, and claims submission. On October 20, 2003, the Union transmitted claim documents to American United Life seeking life insurance and accidental death payouts to Mr. Gindele's children. The life insurance benefit was paid in full on June 4, 2004. American United Life denied the claim for accidental death benefits, finding that Mr. Gindele's death was not the direct result of an injury and free from all other causes, nor caused by an accident.

On April 29, 2005, Allison Gindele, now of majority age, and Adam Gindele, by and through his conservator Anita Gindele, filed suit against American United Life in the Kenton Circuit Court. The Complaint presents two state-law counts – that American United Life's payment of life insurance benefits was untimely, and that it has wrongfully denied payment of accidental death benefits. They assert this conduct violates K.R.S. § 304.12-235, part of Kentucky's Unfair Claims Settlement Practices Act.[3] Defendant thereafter removed the action to this Court, asserting the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") as the jurisdictional basis before this Court.

Following removal, Defendant filed its Answer to the Complaint and the case was set for the Court's standard monthly docket call for new matters. Prior thereto, the parties submitted their Joint Report of Planning Meeting pursuant to Federal Civil Rule 26(f). That Report reflected the parties were then in agreement that Plaintiffs' claims arise under ERISA, that the parties were discussing the extent to which discovery would be appropriate, if at all, and that the parties were exploring early settlement discussions. This

---

[3]Since the counts refer only to K.R.S. § 304.12-235, it is not clear if Plaintiffs intended to assert breach of contract claims, insurance bad faith claims, or both.

3

Report was discussed with the parties' counsel at docket call, with instructions to submit a further status report. The parties' subsequent Joint Status Report indicated Plaintiffs were still considering whether the circumstances of the case were such that a request to take discovery would be made; accordingly, the parties were ordered to make a further report on status at the end of October, 2005.

Plaintiffs then filed their Motion to Remand, now arguing jurisdiction is lacking, and consequently asked that no ERISA briefing schedule be set pending adjudication of their motion. Defendant's status report objected to Plaintiffs raising the question of subject matter jurisdiction at this time, after participating in earlier joint status reports wherein ERISA subject matter jurisdiction was not disputed. Defendant also formally responded to the motion, and Plaintiffs have replied. American United Life also seeks leave to file a tendered Sur-Reply, which Plaintiff opposes.

The issue of the Court's subject matter jurisdiction having now been fully briefed and reviewed by the Court, for the reasons set forth below Plaintiffs' Motion to Remand will be **denied**. The Plan in question is governed by ERISA, each of Plaintiffs' state-law claims relates to payout of benefits under the Plan and is, therefore, completely preempted. The Court therefore having jurisdiction over this proceeding, the parties shall proceed with briefing of the merits as hereinafter provided.

## DISCUSSION

As the removing party, Defendant bears the burden of establishing the existence of federal subject matter jurisdiction. *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit,* 874 F.2d 332, 339 (6th Cir. 1989). Plaintiffs' motion challenges

whether Defendant has proven the insurance policy at issue falls within ERISA. Plaintiffs note that their Complaint does not allege the policy was an ERISA plan or even mention this federal Act. Plaintiffs submit that neither the insurance policy attached to Defendant's Notice of Removal, with its final page entitled "INFORMATION REGARDING THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA)," nor the now filed administrative record, contain evidence sufficient to establish that the subject policy is an employee welfare benefit plan under ERISA.

### A. The insurance coverage at issue is part of an ERISA employee welfare benefit plan

"[ERISA] is a comprehensive federal law governing employee benefits. . . . [which] regulates . . . employee benefit plans that 'through the purchase of insurance or otherwise,' provide medical surgical, or hospital care, or benefits in the event of sickness, accident, disability or death." *Thompson v. American Home Assurance Co.,* 95 F.3d 429, 434 (6th Cir. 1996)(quoting 29 U.S.C. § 1002(1)). Thus, a plan subject to ERISA includes employee welfare benefit plans that are:

> . . . established or maintained by an employer *or by an employee organization,* or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing [accident or death benefits] for its participants or their beneficiaries[.]

29 U.S.C. § 1002(1)(emphasis added).

In *Thompson,* the Sixth Circuit articulated a three-part inquiry to determine whether a plan is an ERISA plan. Namely, (1) is the program exempt from ERISA pursuant to the "safe harbor" regulations; (2) can a reasonable person ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits from the surrounding circumstances; and (3) did the employer or employee organization

establish or maintain the plan with the intent of providing benefits to employees. *Thompson,* 95 F.3d at 434-35. Each of these is addressed by Defendant in its opposition and will be briefly discussed herein. However, it is noteworthy that in their Reply, and despite their initial motion, Plaintiffs now raise no substantive challenge to the insurance at issue constituting an ERISA plan or being provided as part of a plan, other than a footnote remark that no actual plan document or summary plan description ("SPD") has been produced by Defendant. (Doc. #22, at p. 2, n.1) As the Court previously noted, *see* footnote 2, what document or documents constitutes the actual "Plan" referred to the Union's Trust Agreement is not altogether clear and will need to be clarified to the extent necessary for determining standard of review and merits analysis. Nevertheless, that the overall program set up by the Union for purposes of providing benefits to its members was intended to be set up as an ERISA plan is clear and unchallenged by Plaintiffs. Similarly, whether an SPD exists and was provided to participants can raise legal issues that may or may not be relevant to these proceedings, but is not dispositive on the question of whether the benefits at issue are controlled by an ERISA plan.

**(1) Safe Harbor Provisions**

The first inquiry a court makes is whether the plan fits within the narrow "safe harbor" provisions that exempt certain insurance programs from ERISA. 29 C.F.R. § 2510.3-1(j). For the exemption to apply, each of four requirements must be established:

(a) No contributions are made by an employer or employee organization,

(b) Participation in the program is completely voluntary for employees or members,

(c) The sole functions of the employer or the employee organization with respect to the program are, without endorsing the program, to permit

>   the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer, and,
>
> (d) The employer or employee organization receives no consideration in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). According to the affidavit and documents provided by Defendant as attachments to its response, at least three of these factors do not apply here. First, the Union requires that employers with whom it has a collective bargaining agreement contribute to the Fund that helps pay for, among other things, the group life and accidental death insurance coverage. Second, participation is not voluntary. When a person joins the Union, they are automatically enrolled. Third, the employee organization's involvement is more than merely publicizing the availability of coverage and then collecting payment and forwarding it to the insurer. Defendant points out that the Union created and has substantial involvement in administering the employee welfare benefit plan, such as maintaining the various records and forms and assisting with claim submissions for participants and/or beneficiaries, and the Union is listed as the Plan sponsor on the Form 5500s. Moreover, the group insurer(s) are chosen by the Fund's Board of Trustees. Thus, since the Plan's insurance policy selected by the Board fails at least one of these requirements, the safe harbor provisions do not serve to exempt the policy at issue from ERISA. *See Thompson,* 95 F.3d at 435 (stating that "[a] policy will be exempted under ERISA only if all four of the 'safe harbor' criteria are satisfied").

**(2) Surrounding Circumstances as Evidencing a Plan**

7

The second inquiry required under the three-part test from *Thompson* asks if "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." *Thompson,* 95 F.3d at 435 (quoting *Int'l Resources, Inc. v. New York Life Ins. Co.,* 950 F.2d 294, 297 (6th Cir.1991), *cert. denied,* 504 U.S. 973 (1992)). In this case the intended benefits were that of life insurance and accidental death, provided as part of an overall package of union member benefits. It is reasonably clear that the persons receiving an advantage from such, depending upon the type of benefit, were the participants and/or persons designated by participants to benefit. Plaintiffs were aware that decedent did not pay for this benefit, and the Trust Agreement explains that financing for insurance is provided via the Fund into which contributions are made by employers who are parties to collective bargaining agreements with the Union.

**(3)     Does the Plan Provide Benefits**

The third and final inquiry under *Thompson* is "whether the employer [or employee organization] 'established or maintained' the plan with the intent of providing benefits to its employees [or members]."  *Thompson,* 95 F.3d at 435. The documents provided by Defendant evidence that the Union entered into the Trust Agreement, which included the formation of the Plan, in order to provide its members with, among other things, insurance benefits.

In conclusion, under the guidance of *Thompson,* the benefits at issue in this case fit the definition and are similar to other plans that have been adjudicated as ERISA plans. By way of example, Defendant cites to *Abbott v. Pipefitters Local Union No. 552 Hospital Medical & Life Benefit Plan,* 94 F.3d 236, 237 (6th Cir. 1996), *cert. denied,* 519 U.S. 1111

(1997). Unlike in this case, the claims in *Abbott* were filed by union members against the union board of trustees for alleged breach of fiduciary duty and unlawful discrimination in connection with certain trustee decisions. Nevertheless, the case does exemplify the application of ERISA law to a union-sponsored plan, controlled by a board of trustees made up of the union and its representatives, which plan provided life insurance benefits to its members. The Plan in this case, as in *Abbott,* is Union created, sponsored and controlled by a Board of Trustees composed of Union members and employee representatives and, among other things, provides for group life and accidental death insurance to eligible participants.

### B. Plaintiffs' State-Law Claims are Completely Preempted by ERISA

In its opposition to remand, American United Life submits not just that Plaintiffs' claims arise in connection with an insurance policy under an ERISA plan, but that these claims are completely preempted by state law and thus removable to this federal court. To support this conclusion, Defendant points to the Supreme Court's two seminal ERISA decisions, *Pilot Life Ins. Co. v. Dedaux,* 481 U.S. 41 (1987) and *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58 (1987). Defendant submits that the reasoning in these decisions compels the conclusion that state law claims such as those asserted in this case are completely preempted by ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), thereby becoming federal claims removable to federal court.

Defendant's response in opposition to remand thus presents that there is, in fact, an ERISA plan at issue and that removability to federal court is provided by the fact that Plaintiffs' claims relate to this plan and are thereby completely preempted. Plaintiffs did not raise the topic of preemption in substance in their Motion to Remand. The only reference

9

to the subject was the statement, without further explanation, that while their claims ultimately may be preempted, this fact does not establish that they are removable to a federal court.

Now, in their Reply, Plaintiffs direct their focus to preemption.[4] Plaintiffs point out the general rule that they, as the masters of their claims, chose to plead only state-law counts. They submit that federal question jurisdiction does not exist in this case because it is not evident on the face of their well-pleaded complaint nor does the cause of action necessarily depend upon a substantial question of federal law. Plaintiffs acknowledge an exception to the well-pleaded complaint rule where state-law claims relating to an employee benefit plan can be preempted, but only if the action is one to "recover benefits, enforce rights or clarify future benefits." *Warner v. Ford Motor Co.,* 46 F.3d 531, 534 (6th Cir. 1995). Plaintiffs contend their claims do not fall under any of these categories because they are breach of contract claims against the Defendant which they bring as third-party beneficiaries to the contract between the Union and Defendant.

---

[4]Defendant seeks to file a tendered Sur-Reply to respond to this argument. Plaintiffs oppose this request, arguing that they did not present anything new in their Reply, since their argument has always been that their Complaint cannot be characterized as an ERISA claim and Defendant has failed to show that it is one. The Court, however, agrees with Defendant that the Reply presents challenges to the Court's jurisdiction not raised in the remand motion and against which Defendant should have a right to respond. Plaintiffs initially argued the group policy was not an ERISA plan, not that the specific claims asserted by them fell outside ERISA's preemption, as they do now. Plaintiffs had not advanced this specific argument in opposition to removal. A defendant has the burden of establishing jurisdiction, but common sense dictates it may do so by pointing out the prerequisites for the particular jurisdictional basis generally, unless and until a plaintiff raises a more specific challenge. The only thing argued with any detail initially was the lack of any showing that the policy at issue was actually governed by ERISA. Once Defendant addressed this, Plaintiffs essentially accepted in their Reply that an ERISA plan is at play, and instead turned their attention to now protesting that the *claims* they have brought are not preempted and that the *persons* bringing them are not subject to ERISA. While not encouraged, under these circumstances an opportunity to provide a sur-reply is reasonable.

ERISA contains an express preemption clause. It reads that "[e]xcept as provided in subsection (b) of this section [(the savings clause)], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a). In *International Resources v. New York Life Ins.*, 950 F.2d 294, 298 (6th Cir. 1991), *cert. denied,* 504 U.S. 973 (1992), the Sixth Circuit, discussing many Supreme Court cases and in particular *FMC Corp. v. Holliday,* 498 U.S. 52 (1990), held that ERISA preempts all state-law claims that "relate to" employee benefit plans. In so holding, the *International Resources* court followed the Supreme Court's mandate that courts are to interpret ERISA's express preemption clause broadly. *FMC Corp.,* 498 U.S. at 58. In construing "relates to," the Supreme Court has held "that a law relates to an employee welfare plan if it has a connection with or reference to such a plan." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47 (1987)(internal quotation omitted).

If a plaintiff's claim is expressly preempted, ERISA provides a complete defense to the claim; however, it does not provide federal question jurisdiction needed for removal. As the Supreme Court in *Metropolitan Life* explained:

> Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court. One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.

*Metropolitan Life Ins. Co.,* 481 U.S. at 63-64 (internal citations omitted).

11

In contrast to the broad interpretation of ERISA's express preemption clause, the scope of "complete preemption" is narrow given that courts should be "reluctant to find that extraordinary pre-emptive power ... that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65. The Court based this ruling on the policy that Congress had expressly adopted and rejected certain remedies in ERISA, *id.* at 64, and allowing plaintiffs to sue under state-law doctrines allowed them to obtain remedies Congress had expressly rejected in the ERISA context. *Pilot Life Ins. Co.,* 481 U.S. at 54. As the Sixth Circuit explained in *Warner v. Ford Motor Co.,* this complete preemption exception "is narrowly limited in the ERISA context to state common law or statutory claims that fall within the ERISA civil enforcement provision of 29 U.S.C. § 1132(a)(1)(B) because 'the legislative history consistently sets out this clear intention to make [§ 1132(a)(1)(B)] suits brought by participants or beneficiaries federal questions for the purpose of federal court jurisdiction....'" *Warner,* 46 F.3d at 534 (quoting *Metropolitan Life Ins. Co.,* 481 U.S. at 65)). Thus, in addition to ERISA's express preemption clause, the Act's civil enforcement provision, 29 U.S.C. § 1132, impliedly preempts state-law causes of action. *Alexander v. Electronic Data Sys. Corp.,* 13 F.3d 940, 943 (6th Cir. 1993).

This civil enforcement provision preempts any state-law cause of action designed to recover benefits due under an ERISA plan. *Metropolitan Life Ins. Co.,* 481 U.S. at 62-63; *Pilot Life Ins. Co.,* 481 U.S. at 52. Such preemption is an exception to the well-pleaded complaint rule and provides federal question jurisdiction despite the fact that the face of a plaintiff's complaint may contain no federal claim. The Supreme Court held that, in order for ERISA to preempt state law claims and come within this exception, a court must

conclude the claims are "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," as provided in § 1132(a)(1)(B). *Metropolitan Life Ins. Co.,* 481 U.S. at 65-66; *see also Warner,* 46 F.3d at 534.

In this case, in an attempt to avoid § 1132(a)'s complete preemption, Plaintiffs argue that they, as third-party beneficiaries, sue for breach of the insurance contract between the Union and Defendant. But Plaintiffs claim in their Complaint that Defendant "delay[ed] in paying the life insurance benefit" and "failed to pay the accidental death benefit." (Compl. ¶ 16, 23, attached to Doc. #1, Notice of Removal). Such claims derive from a core allegation that American United Life improperly refused to pay accidental death benefits and improperly delayed in paying life insurance benefits; that is, wrongful denial of benefits is at the core of each claim. If Plaintiffs believe they have been wrongly denied benefits under an ERISA plan, they are limited to bringing a suit for equitable relief under 29 U.S.C. § 1132(a)(1)(B). *See Pilot Life Ins. Co.,* 481 U.S. at 52; *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995). Regardless of whether Plaintiffs label their claims as being for breach of insurance contract, and/or bad faith denial of payment, and/or bad faith delay in payment, such claims in one form or another have been found to be preempted by ERISA. *See, e.g., Metropolitan Life Ins. Co.,* 481 U.S. at 62-63 (holding ERISA completely preempts state-law claims to recover benefits from an ERISA plan, including common law contract and tort claims); and *Tolton,* 48 F.3d at 941 (holding ERISA completely preempts state law claims including wrongful death, improper refusal to authorize benefits, and insurance bad faith claims).

As for Plaintiffs' argument in reply that they sue as third-party contract beneficiaries, again, regardless of the label, they are beneficiaries designated by decedent who are seeking to recover benefits. Defendant cites several lower court decisions that involved circumstances where beneficiaries sued for recovery of ERISA plan benefits, suggesting that these authorities evidence that Plaintiffs' status as designated beneficiaries does not alter the ERISA preemption analysis. Plaintiffs have not distinguished or otherwise discuss these cases. The language of ERISA's civil enforcement provision does address not only the nature of the action, but also who may bring the action. *See* 29 U.S.C. § 1132(a)(1)(B) (providing that a civil action may be brought "by a participant or beneficiary -- to recover benefits due...."). Since beneficiaries are among those who may pursue a claim for denial of benefits, Plaintiffs' contention on this point does not change the preemption analysis.

In summary, as both of Plaintiffs' claims are actions seeking to recover benefits under the Plan, they are completely preempted by ERISA. "Accordingly, this suit, though it purports to raise only state law claims, is necessarily federal in character by virtue of the clearly manifested intent of Congress. It, therefore, 'arise[s] under the ... laws ... of the United States,' 28 U.S.C. § 1331, and is removable to federal court by the defendants, 28 U.S.C. § 1441(b)." *Metropolitan Life Ins. Co.,* 481 U.S. at 67.

## CONCLUSION

For the reasons stated hereinabove, **IT IS ORDERED** that:

(1)    Defendant's Motion for Leave to File Sur-Reply (Doc. #23) be, and hereby is, **granted,** with its tendered Sur-Reply hereby ordered **filed of record;**

(2)    Plaintiff's Motion to Remand (Doc. #13) be, and hereby is, **denied;** and,

(3)    The administrative record having been previously filed in this matter under seal, the parties shall file simultaneous dispositive motions **not later than October 31, 2006;** responses thereto **not later than November 30, 2006;** and any replies **not later than December 15, 2006.** Within their motions the parties shall specifically identify the document or documents which constitutes the actual "Plan" referred to in the Union's Trust Agreement so the Court will be able to determine the applicable standard of review.

This 15th day of September, 2006.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\Opinions\2-05-100-MotionToRemand.wpd