Not for Citation or Publication

Eastern District of Kentucky
F I L E D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**at COVINGTON**

SEP 3 0 2007

AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**CIVIL ACTION NO. 05-100-DLB**

**ALLISON GINDELE, ET AL.**                                    **PLAINTIFFS**

**vs.**                    **MEMORANDUM OPINION & ORDER**

**AMERICAN UNITED LIFE**
**INSURANCE COMPANY**                                    **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This is an ERISA suit over payment of life insurance and accidental death benefits. The case is presently before the Court on several pending motions. Defendant American United Life Insurance Company ("AUL") has moved for entry of a judgment in its favor affirming its denial decision. (Doc. #31). Plaintiffs have moved to reverse and enter judgment in their favor. (Doc. #32). Defendant AUL has moved to strike an exhibit offered by Plaintiffs in connection with their motion. (Doc. #41). Plaintiffs have also moved for leave to file an amended complaint. (Doc. #34). Finally, Defendant has moved to join Adam Gindele as a real party in interest. (Doc. #44). These motions are ripe for the Court's consideration.

### FACTUAL AND PROCEDURAL BACKGROUND

Decedent, Tim Gindele, lost his life after being involved in a single-car motor vehicle accident. According to the reports in the administrative record, Mr. Gindele was driving his van on Interstate 275 West in Kenton County in the early morning hours of August 26,

2003, when the vehicle left the roadway, entered and traveled along the ditch line of the highway, tumbling over several times and in the course of which Mr. Gindele, who was wearing a seatbelt, was ejected. The van landed upright, struck a light pole, and then bounced backward and wound up landing on top of Mr. Gindele.

The Taylor Mill, Kentucky, Police Department responded to the scene. The administrative record contains a copy of the investigating officer's report, stamped as a "draft" report. It states,

> The initial cause of the accident is believed to be contributed to distraction and inattention on the part of the driver. It is believed that the driver was eating a cheese coney at the time of the accident. Inside the vehicle was located a twenty pack cartoon [sic] for the coneys. Ejected from the vehicle with the driver were two coneys. A third coney was located inside the vehicle. Chile [sic] was present on the dash board and on the driver.

(AUL 333). The responding officer estimated the speed of the van as between 60 and 70 miles per hour. (AUL 332). The draft report, in the box labeled "suspected drinking driver" is marked "N," presumably indicating no. (AUL 332). A second Police Traffic Report in the record, prepared by the same officer and stamped "accepted" also reflects "no" in this same box. (AUL 257). The printout of the officer's computerized message to the state police headquarters, on the line for "alcohol involved" reads "no." (AUL 340).

The Coroner performed an autopsy and prepared an autopsy report and death certificate. The Autopsy Report states "Routine toxicology studies are positive for: BA, 0.180 gm/100." (AUL 71). Under the section titled "Final Diagnosis," the Report reads, "Comment: Death, in my judgment, is due to positional asphyxia. This is based on history of positioning of motor vehicle on body." (AUL 64). The Death Certificate is dated November 28, 2003. (AUL 259). In the section marked "Manner of Death," the box for

2

"accident" is checked.  Listed on the Certificate for immediate cause of death is "positional asphyxia," with "motor vehicle accident" listed as the sequential condition leading to the immediate cause.  The Certificate also provides a section to state "Other significant conditions contributed to death but not resulting in the underlying cause given in Part I." In this section the coroner marked "blood ethyl alcohol (0.180 gm/100) and atherosclerotic cardiovascular disease." (AUL 259).

At the time of the fatal accident Mr. Gindele was a member of the Cincinnati Stage Employees Union, Local No. 5 (the "Union").  As a benefit of his union membership, he was provided with life insurance and accidental death coverages.  At the time of his death these benefits were provided pursuant to a group policy issued by The Union Central Life Insurance Company, now Defendant AUL.  These coverages were provided in conjunction with a health and welfare benefit plan sponsored by the Union, the IATSE Cincinnati Stage Employees Local No. 5 Health and Welfare Plan (the "Plan").  In 1976 the Union entered into the Cincinnati Stage Employees Local No. 5 Health & Welfare Fund Agreement and Declaration of Trust ("Trust Agreement").  This Trust Agreement created the Plan, and also created the Cincinnati Stage Employees Local No. 5 Health & Welfare Fund (the "Fund"). Employers with whom the Union has collective bargaining agreements contribute to the Fund, with these funds used to pay the premiums for group benefits, including life and accidental death insurance.  Insurers are selected and the group policies negotiated by the Board of Trustees of the Fund.  The Trust Agreement has been amended through the years, including the type and amount of benefits offered and Plan participant eligibility requirements.  The Plan provisions in effect at the time of Mr. Gindele's death, including the then current amendments, called for a group policy offering term life insurance and

3

group accidental death benefits of $100,000 each for eligible participants in the Plan. As noted, this group policy had been procured from The Union Central Life Insurance Company.

On October 20, 2003, the Union transmitted claim documents to Defendant seeking life insurance and accidental death payouts pursuant to the group policy. Mr. Gindele had designated his children, Allison Gindele and Adam Gindele, beneficiaries of these insurance benefits. The life insurance benefit was paid in full on June 4, 2004. AUL denied the claim for accidental death benefits, finding that because he was intoxicated at the time, Mr. Gindele's death was not the direct result of an injury and free from all other causes, nor was it caused by an accident. The insurer concluded that accidental death benefits were therefore not due and owing under the terms of the policy.

On April 29, 2005, Allison Gindele, an adult, and Adam Gindele, by and through his conservator Anita Gindele,[1] filed suit against AUL in the Kenton County Circuit Court. The Complaint presented two state-law counts: that AUL's payment of the life insurance proceeds was untimely, and that it had wrongfully denied payment of accidental death benefits. Defendant then removed the case to this Court, asserting the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA") as the jurisdictional basis. Plaintiffs sought to remand the action, and argued jurisdiction was lacking. However, the Court denied remand, ruling that the insurance coverage at issue

---

[1]At the time suit was filed, Adam Gindele was a minor and his interest in this proceeding was represented via the Conservator who sued on his behalf. Since Adam is now of majority age, Defendant has moved to join him as a Plaintiff so that there is no question about the proper parties to seek and potentially receive any benefits. This request to join Adam was not opposed, and will be granted by the Court as subsequently ordered herein.

4

was provided in conjunction with an ERISA employee welfare benefit plan as defined by 29 U.S.C. § 1002(1), and therefore Plaintiffs' claims fell within the jurisdiction of the federal district courts. (Doc. #25).   Thereafter, a briefing schedule was entered for the filing of cross motions by the parties seeking judgment in their/its favor.  Plaintiffs also sought leave to take certain discovery, which request was denied by the assigned Magistrate Judge. Plaintiffs have also moved for leave to file an amended complaint, supposedly to instead restate the claims they presented to the state court as ERISA claims.  This request is addressed later in this Memorandum Opinion and Order, and the Court now turns its attention to the primary issue before it: whether AUL's decision to deny accidental death benefits should be affirmed, or whether such benefits are due and owing to Plaintiffs under the policy thus necessitating the decision be reversed.

## DISCUSSION

### A.    Standard of Review

The pivotal inquiry and logical starting point for any ERISA benefits case is the standard of review to be applied.  But the ERISA statute does not specify the judicial standard of review.  A plan administrator's denial of benefits under an ERISA plan is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 613 (6th Cir. 1998).  When a plan administrator has discretionary authority to determine benefits, we will review a decision to deny benefits under "the highly deferential arbitrary and capricious standard of review." *Yeager v. Reliance Standard Life*

5

*Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996). Under the arbitrary and capricious standard, the court must affirm a benefit determination if it is rational in light of the provisions of the ERISA plan, *see Smith v. Continental Cas. Co.,* 450 F.3d 253, 258 (6th Cir. 2006), or if the record evidence establishes a reasonable basis for the decision, *Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689, 693-94 (6th Cir. 1989).

The Sixth Circuit has consistently required that a plan contain a clear grant of discretion to the administrator to determine benefits or interpret the plan. *See Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 555 (6th Cir. 1998)(*en banc*); *Brown v. Ampco-Pittsburgh Corp.,* 876 F.2d 546, 550 (6th Cir. 1989). The parties do not agree on the standard of review to be applied. Contrary to Defendant's suggestion, determining the appropriate standard of review is not a simple task.

AUL maintains that the arbitrary and capricious standard of review applies to the review of its denial of accidental death benefits. In support, AUL relies upon the fact that the subject policy contains a page that expressly provides it with discretion to interpret the plan. That page, labeled "Information Regarding the Employee Retirement Income Security Act of 1974 (ERISA)," sets forth information about the process for appealing a claim denial. It also contains the following language:

> The person or entity administering the plan provisions of this Plan is a fiduciary and has full and complete authority, responsibility, discretion, and control over plan administration. This includes, but is not limited to, the authority to:
> 1. construe and interpret this plan;
> 2. determine all questions of eligibility for plan participation and for payment of benefits;
> 3. determine the amount of plan benefits payable, and authorize and direct the payment of those benefits;

6

4.   carry out the provisions of the plan by applying its rules and regulations uniformly to all plan participants in similar circumstances;

5.   provide plan participants, government agencies, and other appropriate parties, with such returns, reports, schedules, and individual statements as are required by law, and within any prescribed time limits; and

6.   do all other acts which are reasonably required to administer the plan in accordance with its provisions, or which are required by law.

AUL further maintains that not only is this page a part of its group policy, but that the subject insurance policy is incorporated into the Plan via the reference to the policy contained in the Ninth Amendment to the Trust Agreement. This, it submits, is sufficient to establish that its denial decision is reviewed under an arbitrary and capricious standard.

Plaintiffs dispute this standard of review. They challenge the validity and application of this additional ERISA page put forth by AUL.

After reviewing the record and considering the arguments of the parties, the Court is not convinced that the arbitrary and capricious standard applies here. The page Defendant relies upon as granting it discretion looks to be more of a form-type sheet on ERISA generally. It makes no reference to this policy, the Trust Agreement or any delegated powers specifically. The Plan[2] was formed via the Trust Agreement entered into by the Union. Review of that Trust Agreement reflects that administration of the Trust Fund, whose purpose is to secure life insurance and other benefits for employees, is vested in a Board of Trustees. The Agreement provides the Trustees with various powers

---

[2]ERISA requires that every employee benefit plan "be established and maintained pursuant to a written instrument." 29 U.S.C. § 1101(a)(1). ERISA further requires that a written plan contain certain features, including a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan, a description of the procedures for administering and amending the plan, and a specific description of the basis upon which payments are made to and from the plan. 29 U.S.C. § 1102(b)(1)-(4).

and duties, among them determining benefits to be provided, eligibility of employees to those benefits, and funding of those benefits on either a self-insured basis or through purchase of insurance policies negotiated by them.

The discretion afforded a fiduciary under an ERISA plan must be expressly identified. This circuit takes a narrow view of what is sufficient to evidence that express identification. *See Noble v. Cumberland River Coal Co.,* 26 F. Supp. 2d 958, 961 n.3 (E.D. Ky. 1998)("the plan document, itself, must expressly provide for the delegation of duties"); *Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1376 (6th Cir. 1996)("the area within which discretion can be exercised or the amount of discretion exercised depends on the scope of the grant [of authority] .... A plan administrator has exactly the amount and type of discretion granted by the plan, no more, and no less.")(quoting *Anderson v. Great West Life Assurance Co.,* 942 F.2d 392, 395 (6th Cir. 1991)). AUL points to nothing in the Trust Agreement that expressly provides it with such discretion, nor does the Court's review of the Agreement evidence that insurers contracted with per the Agreement were intended to have such, or that the Trustees possess and have delegated such discretion to the insurers. Pertinent sections of the Agreement state:

> Article IV - Powers and Duties of Trustees; Purchase of Policies
> Section 8. Holding and Transfer of Trust Fund (Including Policies)
> (c)    The Trustees may exercise all rights and privileges granted to the policyholder by the provisions of any policy, and may agree with the insurance company to any alternative, modification, or amendment of such policy and may take any action with respect to any such policy which they, in their discretion, deem necessary or advisable for the uses and purposes of this Agreement.
>
> Article V - The Insurance Company
> No insurance company which may issue any policy to the Trustees pursuant to this Agreement shall be required to take or permit any action contrary to the provisions of such policy, or be bound to allow any benefit or privilege to

any person interested in any policy it has issued which is not provided in such policy, or be deemed to be a party to this Agreement for any purpose, or be responsible for the validity of this Agreement, or be required to look into the terms of this Agreement or question any act of the Trustees hereunder, or be required to see that any action of the Trustees is authorized by this Agreement. Any insurance company shall be fully protected in taking or permitting any action on the faith of any instrument executed by the Trustee, or in their names as Trustees by any Trustee or employee of the Trustees authorized to sign on their behalf and shall incur no liability for so doing.

Article VII - The Plan
Section 1.
A Plan shall be adopted by the Trustees which shall provide for hospital, surgical and medical benefits on an actuarially sound basis. The eligibility requirements for employees and their dependents where applicable, the terms and conditions applicable to the granting of benefits and such other provisions as are necessary shall be determined by the Trustees in their sole discretion.

And the Ninth Amendment to the IATSE[3] sets forth the particular life and accidental death and dismemberment benefit to be provided, and that it

shall be provided pursuant to a group policy with Union Central Company, Group Policy No. 8339; provided, however, that nothing herein shall prevent the Trustees from providing such benefits through insurance contracts with other insurance companies or carriers consistent with the provisions of Article IV of the Plan, as amended.

These provisions fail to demonstrate that AUL has been delegated authority to determine benefits eligibility, thus giving rise to a de novo standard of review. *See Sanford v. Harvard Indus.,* 262 F.3d 590, 596 (6th Cir. 2001)(benefit decision by entity not authorized under the governing Plan to do so is reviewed de novo); *see also Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 229 (2d Cir. 1995)("[w]here an unauthorized party

---

[3]Again, the wording and section references of this Amendment suggest there exists a separate Plan document itself, aside from the Trust Agreement that has been provided. Nevertheless, Defendant, who carries the burden of establishing its authority, insists that any such Plan document is represented via the Trust Agreement itself, any amendments thereto, and the policies purchased.

makes the determination, a denial of plan benefits is reviewed under the de novo standard"); *Rodriguez-Abreu v. Chase Manhattan Bank,* 986 F.2d 580, 584 (1st Cir. 1993)(same)("fiduciary must properly designate a delegate for the fiduciary's discretionary authority"); *Arthurs v. Metropolitan Life Ins. Co.,* 760 F. Supp. 1095 (S.D.N.Y. 1991)(de novo review applied to insurer's review of accidental death benefit claim, since plan did not evidence that discretion was given to insurer). None of these provisions of the Trust Agreement or the Ninth Amendment evidences the discretion Defendant seeks to give itself, and certainly not in a clear articulation as is required in this Circuit. There is no identified delegation of discretion to AUL in the administration of the claim.

AUL asserts in a conclusory manner that its group policy is incorporated by reference in the Plan. However, it points to no such "incorporation by reference" language in the Trust Agreement, or statutory or case authority that provides for such as a matter of law. Even were the policy so incorporated, this fact alone has no particular legal significance the Court can discern as far as constituting a delegation of discretionary authority given the Trustees under the Plan.

In addition to these identified hurdles in proving that AUL was vested with such discretionary authority, the Court is not persuaded that the supplemental ERISA page Defendant relies upon is legally sufficient to convey such authority. The policy certificate expressly provides that "The [insurance] contract is made up of: (1) the Policy; (2) the Policyholder's Application attached to the Policy; and (3) the Individual Applications of the Insureds, if any." The supplemental ERISA page does not fall within any of these categories. The Table of Contents identifies what the policy is comprised of; namely, an unnumbered coverage schedule and an eighteen-page policy. The ERISA page is not

10

identified in the Table of Contents, nor is it one of the eighteen numbered pages. Thus, given AUL's own integration clause, Defendant has failed to successfully evidence that this page is part of any policy it asserts is incorporated by reference, notwithstanding the other challenges to this supplemental page raised by Plaintiffs.[4] *Cf. Paulson v. The Paul Revere Life Ins. Co.,* 323 F. Supp. 2d 919, 937-38 (S.D. Iowa 2004)(concluding that certificate was not a relevant plan document and that "[d]efendant cannot grant itself discretion").

In summary, Defendant has not carried its burden of proving that it is entitled to application of the arbitrary and capricious standard. *See Brown,* 876 F.2d at 550 (plan administrator bears the burden of establishing it has discretionary authority over benefits decisions). Its denial will therefore be reviewed de novo. *Mitchell v. First UNUM Life Ins. Co.,* 65 F. Supp. 2d 686, 693 (S.D. Ohio 1998)(review of insurance company's benefit denial would be de novo given that neither policy nor plan granted insurer discretion).

## B.   Consideration of the Administrator's Decision to Deny Accidental Death Benefits

Under the de novo standard of review, courts should consider "the proper interpretation of the plan and whether an employee is entitled to benefits under it" based solely on the record that was before the administrator. *Perry v. Simplicity Engineering,* 900

---

[4]Plaintiffs offered the Affidavit of Thomas A. Guidugli, business representative for the Union, along with subsequent AUL group policies purchased by the Fund, to support the conclusion that the AUL policy at issue did not contain this supplemental ERISA form page. Plaintiffs rely upon this evidence to make the inference that the supplemental page for the subject policy was also not provided at the time of its purchase. Defendant protests the relevancy of these materials, and note that they are outside the administrative record. The exhibit goes to the issue of the standard of review and plan itself, rather than the substantive merits of the claims processing engaged in by Defendant and, therefore, its submission is appropriate despite it not being contained in the administrative record. But for the reasons noted, the Court has already found that the supplemental page does not vest AUL with the suggested discretion, regardless of this further submission by Plaintiffs.

11

F.2d 963, 966-67 (6th Cir. 1990). District court review examines "whether or not the Court agrees with the administrative decision based on the record that was before the administrator." *Id.* at 966; *see also Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372, 1376 (6th Cir. 1996).[5] Under the de novo standard, this Court's role is to interpret the terms of the plan "without deferring to either party's interpretation." *Lake,* 73 F.3d at 1377 (quoting *Bruch,* 489 U.S. at 112)). "Given [the] language and history [of ERISA,] we have held that courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110 (1989)(quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56 (1987)). Federal substantive law is used, including the "common-sense canons of contract interpretation." *Rodriguez-Abreu,* 986 F.2d at 586.

The AUL policy requires, to constitute a "covered loss" under the accidental death and dismemberment coverage, that the loss be

> a loss shown in the TABLE OF LOSSES that meets all of the following:
> (1)   The Covered Loss results directly from an injury and must be free from all other causes. This injury must be caused by an accident that occurs while the employee is insured for this benefit.

---

[5]Defendant moves to strike Plaintiffs' Exhibit G, a brochure entitled "Traffic Safety Facts 2004" compiled by the National Center for Statistics and Analysis of the National Highway Traffic Safety Administration, attached to Plaintiffs' Reply. AUL submits consideration of the exhibit is not appropriate because it was not contained in the administrative record. With some limited exceptions, materials outside the administrative record are not considered on review of the benefit decision. However, in considering submissions presented in support of summary judgment motions, courts can consider competent evidence while disregarding inadmissible evidence. *See A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.,* 650 F.2d 118, 121 (6th Cir. 1981); *Wimberly v. Clark Controller Co.,* 364 F.2d 225, 227 (6th Cir. 1966). For this reason, Defendant's motion will be denied. Nevertheless, detailed review of Plaintiffs' submission and whether particular portions would be competent and admissible in this ERISA case despite the general rule prohibiting extraneous materials is unnecessary, since the information offered by Plaintiff was not considered by the Court in its de novo review.

(2)     The Covered Loss must occur no later than 90 days after the date of the accident.

(3)     The Covered Loss must not be excluded under the LIMITATIONS shown in this benefit.

(4)     As to loss of life: The injury must be evidenced by a visible bruise or wound on the body. However, this does not apply to drowning or to internal injuries revealed by an autopsy.

The referenced LIMITATIONS within the policy for which coverage is excluded are:

(1)     A disease or infirmity of the mind or body.

(2)     Ptomaines or bacterial infections, except pus-forming infections that result from injury which these LIMITATIONS do not exclude.

(3)     Medical or surgical treatment, except where it is both: (i) treatment of an injury that meets the tests of a Covered Loss; and (ii) treatment performed within 90 days after the injury.

(4)     Insurrection; an act of war, declared or undeclared.

(5)     Unlawful participation in a riot.

(6)     An attempt to commit, or committing, an assault or felony by the employee.

(7)     Intentionally self-inflicted injury.

(8)     Suicide or attempted suicide whether, in either case, sane or insane.

(9)     Riding in or descending from any kind of aircraft: . . .

(10)    Intentionally taking a drug that is not part of a professional medical treatment plan.

Defendant's initial denial letter was sent June 4, 2004. (AUL 213-15). The administrative record reflects that a few weeks before this letter was sent, an internal Life Claims Checklist Form had been completed and placed in the file. That form, in response to the question "Is the cause of death accidental?" was marked "Yes" by the claims examiner. (AUL 2). Although Defendant's initial denial of accidental death benefits cited to some of the policy's limitations as among the reasons for denial, at this point Defendant's denial has focused and is premised upon Mr. Gindele's having consumed alcohol and being intoxicated prior to losing control of his vehicle. Its final decision letter to Plaintiffs' counsel dated February 17, 2005, summarizes its determination as follows:

13

> AUL continues to advocate that Mr. Gindele's death was not solely caused by external and accidental means, or independently of all other causes. By definition, an accident occurs as an undersigned [sic], sudden and unexpected event, usually afflictive and accompanied by force. Mr. Gindele's volitional act of drinking and then driving removed his death from the realm of chance or unknown or remote causes. As such, it is reasonable to assume that someone who drinks alcohol and drives, the end result may be injury or death and is reasonably foreseeable. AUL has concluded Accidental Death and Dismemberment benefits are not payable under the policy because Mr. Gindele's loss was not independent of all other causes within the meaning of an accident as stated in the policy contract.

(AUL 33). The word "accident" is not defined in the AUL policy.[6] AUL concluded that Gindele's consuming alcohol, then driving and losing control of his vehicle renders any consequences (i.e. injury) non-accidental for purposes of accidental death benefits. It submits that this is a reasonable interpretation of the policy provision.

Perhaps not surprisingly, there has been significant dispute over the impact of one's alcohol consumption or other voluntary conduct on a claim seeking accidental death benefits. The plethora of authority has been sought out and cited by the parties in their cross dispositive filings.

---

[6]Plaintiffs seek to employ collateral estoppel to hold AUL to a definition of the term "accident" as found by Judge Beckwith in the case of *Debra A. Boone, Administratrix of the Estate of Craig S. Hutchinson v. American United Life Insurance Company,* Case No. 1:02-CV-147, Southern District of Ohio. As the Supreme Court has explained, "'Res judicata' is the term traditionally used to describe two discrete effects: (1) what we now call claim preclusion (a valid final adjudication of a claim precludes a second action on that claim or any part of it) and ... (2) issue preclusion, long called 'collateral estoppel' (an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim)...." *Baker by Thomas v. General Motors Corp.,* 522 U.S. 222, 233 n.5 (1998)(internal citations omitted). However, use of collateral estoppel is not appropriate here, as the issue of what constitutes an "accident" must of necessity be placed in context. This case involves a different group policy and different factual circumstances and so is not sufficiently similar to the *Boone* decision to collaterally estop AUL from presenting its argument here on the question of how "accident" should be interpreted.

14

Some of these cases point out and provide an historical discussion of the trend from employing an "accidental means" or "accidental result" analysis, to that of determining whether an injury is accidental by examining whether it was subjectively expected and objectively foreseeable, exemplified by the often-cited case *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077 (1st Cir. 1990). *See Jones v. Metropolitan Life Ins. Co.,* 385 F.3d 654, 664-65 (6th Cir. 2004)(noting this progression and the present day ERISA cases focus "upon the expectations and intentions of the insured"). But in this Court's view, the legally significant distinction with the instant case is the application of the de novo standard of review.

With an arbitrary and capricious analysis, the court's examination is directed to whether the administrator's interpretation of an injury caused by an accident can be said to be reasonable. This is a highly deferential standard. Those cases upholding the administrator's decision did so resting heavily upon the broad discretion afforded the claims administrator to interpret the policy's terms. *See, e.g., Cates v. Metropolitan Life Ins. Co., Inc.,* 14 F. Supp. 2d 1024 (E.D. Tenn. 1996), *aff'd* 149 F.3d 1182 (6th Cir. 1998)(unpublished table decision affirming district court's review and acceptance of administrator's claim denial under arbitrary and capricious standard); *Cozzie v. Metropolitan Life Ins. Co.,* 140 F.3d 1104 (7th Cir. 1998). Still others have held otherwise, even under such standard. *See, e.g., West v. Aetna Life Ins. Co.,* 171 F. Supp. 2d 856 (N.D. Iowa 2001).

Applying a per se rule of denying accidental death benefits, in circumstances where it is undisputed the decedent consumed some alcohol, merely because this would fall in

15

step with the conclusions of the majority of jurisdictions, would be inappropriate. Rather, the governing documents, the applicable legal standard, and the circumstances of the action should dictate that conclusion.

The governing document here, the policy, does not define "accident." Defendant's interpretation is that any injury occurring after a covered employee consumes alcohol cannot be said to be the result of an accident, because there is a presumption that the intoxicated state of the employee caused or contributed to the event causing injury. Without comment or detailed analysis of those authorities concluding that such an interpretation withstands arbitrary and capricious analysis, the Court finds it does not pass a de novo review standard under the factual circumstances of this case.

Application of the de novo standard hereto dictates a finding that a covered loss did in fact occur that was not within the otherwise specified limitations on coverage. The policy provisions are to be interpreted "according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 556 (6th Cir. 1998). Instructive to this application is the district court's analysis in *Laasmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment and Dependent Life Ins. Plan,* 2007 WL 1613255 (D. Colo. June 1, 2007). In that case, Metropolitan Life Insurance Company denied accidental death benefits in a single car rollover case where there was evidence the driver had been drinking. Similar to AUL's denial decision at issue, the denial in *Laasmar* was based upon the determination that "[t]he dangers of driving while intoxicated [being] so widely publicized it is common knowledge that a death resulting from drunk driving is the reasonably foreseeable result of such conduct." *Id.* at *2.

16

The *Laasmar* court found that a de novo review standard applied, as is the case herein. In addition, the policy language at issue there similarly did not define the word "accident." Employing a de novo review, that court noted that in circumstances involving automobiles, viewing the term "accident" in a colloquial context was consistent with "a common and ordinary meaning which a reasonable person in the position of the Plan participant would have understood the words to mean," rather than the "more technical, legalistic definition of "accident" that pertains to the foreseeability of the event" as advocated by defendant. *Id.* at *4.

> A specific, precise meaning for "accident" could have been included in the Plan. In the absence of a definition in the Plan, this Court is compelled to conclude that a reasonable person in Mark Laasmar's position would have understood the term "accident" in a motor vehicle context to simply refer to an event involving the vehicle, not the cause or foreseeability of the event. Thus, under the Plan, the Court concludes that the rollover of Mark Laasmar's vehicle was an "accident."

*Id.* at *5. This reasoning is persuasive to the circumstances presented here. The *Laasmar* court emphasized that the administrative record reflected the officer, coroner, and even the insurance benefits specialist had all used the term "accident" in its colloquial sense. Such is also the case with the administrative record for the Gindele claim and remarks of the investigating officer, the coroner, and even the claims reviewer.[7]

---

[7]The Court is mindful that Defendant, like Plaintiffs, also filed supplemental authority, *Richardson v. Mutual of Omaha Ins. Co.,* 2007 WL 1577942 (W.D. Ky. May 31, 2007), a case that like *Laasmar* involved de novo review, yet concluded the crash and death were not accidental due to decedent's excessive state of intoxication. However, in *Richardson,* all of the other circuit decisions and decisions of district courts within the Sixth Circuit relied upon by that court as supportive of the "near universal accord that alcohol-related injuries and deaths are not 'accidental'" under ERISA insurance contracts, were cases involving an arbitrary and capricious standard of review.

Also compelling are the additional facts surrounding Mr. Gindele's death, over and above simply the undisputed fact that he had consumed alcohol, as in *Laasmar.* Namely, even were the Court to engage in a more technical "foreseeability of the event" analysis, the record here contains unrefuted evidence suggesting that at the time the Gindele vehicle left the roadway, his attention was likely distracted by food. This is supported by the officer's statements and conclusions. It is not negated by the coroner's certificate, because his notation of blood alcohol was in response to "other significant conditions contributed to <u>death</u> ***but not resulting in the underlying cause given in Part I."*** (emphasis added). In the Part I section for the coroner to list "diseases, injuries, or complications that caused death," he listed only asphyxia and *motor vehicle accident.* He does not indicate anywhere on the certificate that alcohol caused or contributed to the single car rollover. The investigating officer believed that eating conies while driving was the cause of the rollover. The administrative record itself, and in particular the factual investigation, does not support a conclusion that alcohol caused or contributed to the accident which took Mr. Gindele's life. Thus, the only "foreseeability" relied upon by AUL is a presumptive one about alcohol in general, and not the particular circumstances of the claim. If, in issuing its policy, AUL did not intend to cover any injury to a driver who had consumed alcohol, then such would have been a specific exclusion listed in the policy.

Accordingly, the Court finds that a "covered loss" under the accidental death provision of the subject AUL policy occurred. Defendant's motion for a judgment affirming its decision must therefore be denied. Moreover, Plaintiffs have moved for summary judgment in their favor. Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter

18

of law." Fed. R. Civ. P. 56(c). As the Court has concluded hereinabove that under a de novo review standard there is no genuine issue as to whether a "covered loss" occurred, thereby implicating coverage and making accidental death benefits are due and owing, Plaintiffs are therefore entitled to summary judgment in their favor on their denial of benefits claim.

### C.   Plaintiffs' Tendered Amended Complaint

Also pending is Plaintiffs' motion for leave to file an amended complaint. The Court finds, for several reasons, that allowing an amendment is unwarranted.

Leave to amend a complaint is to be freely granted where justice so requires. Fed. R. Civ. P. 15(a). However, the futility of amending a complaint is appropriate grounds on which to deny the motion to amend. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Jet, Inc. v. Sewage Aeration Sys.,* 165 F.3d 419, 425 (6th Cir. 1999); *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1041 (6th Cir. 1991)("an amendment may not be allowed if the complaint as amended could not withstand a Fed. R. Civ. P. 12(b)(6) motion").

The Court previously held that Plaintiffs' Complaint setting forth state-law claims was preempted by ERISA and therefore removable under the Court's federal question jurisdiction. At the heart of that state court filing was Plaintiffs' contention that they were wrongfully denied accidental death benefits. Plaintiffs' motion indicates they desire to file an amended complaint in order to properly allege claims arising under ERISA. It is not, however, necessary for them to do so, as the Court can construe those claims raised under state law that in some form are available under ERISA. The alleged wrongful denial of accidental death benefits under state law, Count I of the tendered amended complaint, is

19

construed as a claim for denial of benefits under 29 U.S.C. § 1132(a)(1)(B).  That claim

has been adjudicated as provided hereinabove, and amendment is therefore unnecessary.

Count II seeks to assert a claim for what Plaintiffs argue was the unlawfully delayed

payment to them of the primary life insurance benefit.  Again, amendment to assert this

claim is unnecessary.  To the extent the claim seeks to collect damages because any

purported delay in payment violated state law, the Court has already determined that such

state law claim is preempted by ERISA.  And to the extent the claim is construed as

presenting an ERISA violation, Defendant argues no such damages are recoverable under

ERISA.  In their Reply, Plaintiffs do not respond to this contention.  But determining

whether any such damages, however categorized, are legally available under ERISA need

not be analyzed, because the Court finds that no unreasonable delay in payment in fact

occurred, and therefore amendment to assert such a claim would be futile.  The record

reflects that although various documents were relayed to AUL, the final paperwork

necessary for it to properly process the life insurance payment was not received until

approximately April, 2004.  Given this, a payment of life benefits in early June, 2004, was

not dilatory.

Finally, Count III seeks to add a new claim for violation of ERISA's disclosure

provisions, requesting imposition of the per diem penalty provided by statute for failure to

provide Plaintiffs with a summary plan description ("SPD").  Defendant argues it would be

futile to permit an amendment to assert this claim, as it is the Union, as the Plan

Administrator, that is responsible for providing the SPD.  Whatever the legal implications

20

of this assertion, *see* 29 U.S.C. § 1021(a),[8] it would appear Defendant cannot be held liable where AUL is not the plan administrator. *See VanderKlok v. Provident Life & Acc. Ins. Co.,* 956 F.2d 610, 618 (6th Cir. 1992).   In addition, the Court denies allowing an amendment to present this claim for other reasons.   Plaintiff's efforts to amend, in particular to add a new claim, are untimely given that the dispositive motions have already been filed.   In addition, what penalty should be assessed is typically within the Court's discretion.   In this case, that award for such technical violation, assuming arguendo that it can be assessed against Defendant, is less compelling given the Court's conclusions herein that a de novo review standard is to be applied and that under this standard the Defendant's decision denying accidental death benefits should be reversed.

In summary, the policy in favor of liberal leave to amend is not without its limitations. In this case, allowing the amendment proposed by Plaintiffs would be futile and serve no useful purpose.   The request to amend will therefore be denied.

### CONCLUSION

For the reasons stated hereinabove, **IT IS ORDERED** that:

(1)      Defendant's Motion for Joinder (Doc. #44) is hereby **granted.**   The Court Clerk shall add Adam Gindele, individually as a named Plaintiff to this proceeding.

---

[8]"The administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b)... to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan - (1) a summary plan description...."  An "administrator" is defined under ERISA as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe."   29 U.S.C. § 1002(16)(A).

21

(2)   Plaintiffs' Motion for Leave to file an amended complaint (Doc. #34) is hereby

**denied.**

(3)   Defendant's Motion to Strike (Doc. #41) is hereby **denied.**

(4)   Defendant's Motion for Judgment in its favor (Doc. #31) is hereby **denied.**

(5)   Plaintiffs' Motion to Reverse (Doc. #32) is hereby **granted,** with Judgment in

Plaintiffs' favor to be entered contemporaneously herewith.

This is a final and appealable Order.

This 30th day of September, 2007.



Signed By:
David L. Bunning
United States District Judge
_____
**DAVID L. BUNNING**
**United States District Court Judge**

G:\DATA\Opinions\2-05-100-MotionsForJudgment.wpd

22